UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

ANTONIO CASTILLO
GUADARRAMA,

                    Defendant.

Case No.:  24-cr-02430-JES

**ORDER DENYING MOTION TO
SUPPRESS EVIDENCE**

**[ECF No. 275]**

## I.   INTRODUCTION

On July 21, 2022, Defendant Antonio Castillo-Guadarrama ("Defendant") was arrested for conspiring to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846; distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1); and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). On January 23, 2026, Defendant filed a motion to suppress evidence challenging the sufficiency of probable cause in the search warrant. ECF No. 275 ("Mot."). On

1

24-cr-02430-JES

February 6, 2026, the Government filed an opposition to the motion and on February 13, 2026, Defendant filed a reply brief. ECF Nos. 293 ("Opp'n"), 303 ("Reply"). On February 20, 2026, the Court heard oral argument on the motion. ECF No. 310. Based on the papers filed and argument of counsel, the Court **DENIES** the motion to suppress.

## II.    FACTUAL BACKGROUND

Beginning in approximately October 2021, the Drug Enforcement Agency ("DEA") began investigating a Mexican-based drug trafficking organization ("Roldan DTO") that was suspected of mailing kilograms of drugs from California to locations across the country, including New York. Opp'n at 1-2. During the course of the investigation, law enforcement identified Luiscarlo Roldan ("Roldan") as one of the leaders of the Roldan DTO. *Id.* The investigation revealed that narcotics were hidden in packages, which were shipped, usually from San Diego, California, to cities on the east coast, primarily through United Parcel Service ("UPS") and Federal Express ("FedEx"). Mot. at 2. Associates of the Roldan DTO would then fly on commercial airlines, usually, from San Diego to the cities where packages were mailed. Opp'n at 2. Upon arrival in the targeted cities, associates would travel to rented AirBnB short-term rental properties and received or attempted to receive shipped packages of narcotics at those addresses. Mot. at 2.

On or about July 14, 2022, investigators in the Southern District of New York applied for and obtained a search warrant signed by the Honorable James L. Cott, United States Magistrate Judge, to track a cellphone, (619)301-7281 ("Target Cellphone"). *Id.* The warrant authorized the Government to obtain prospective and historical location information, cell site data, as well as pen register information for the Target Cellphone for a period of 45 days. *Id.*

In support of its application, DEA Special Agent Matthew Banwer submitted an affidavit in which the magistrate judge found sufficient probable cause for issuing the warrant to track the Target Cellphone:

- Since approximately the summer of 2021, law enforcement officers had been investigating a DTO responsible for sending "kilogram quantities of narcotics,

24-cr-02430-JES

typically fentanyl, from California to location[s] across the country, including the Southern District of New York." ECF No. 278, Exh. A ("Affidavit") at 12.

- During the investigation, law enforcement officers learned from reports and records, AirBNB and airline subpoenas that a number of couriers for the DTO "traveled from the San Diego area to the New York City area, … rented AirBNB short-term rental properties, and … received or attempted to receive packages of suspected narcotics at those addresses." *Id.*

- Between approximately July 1, 2022, and July 11, 2022, the Target Cellphone appears to have been "located in the San Diego, California area and then in the New York City geographic area[,]" which was "consistent with the travel of other couriers of the DTO." *Id.*

- A confidential source ("CS") who worked as a courier for the DTO provided law enforcement with numerous telephone numbers and contact information for members of the DTO, including for an individual the CS identified as the leader of the DTO. *Id.* at 13. The CS stated that he received instructions from the leader of the DTO through WhatsApp messages. *Id.*

- On July 8, 2022, the Target Cellphone had two WhatsApp communications with the DTO's leader's phone. *Id.*

- On July 11, 2022, law enforcement agents seized approximately $100,000 in suspected narcotics proceeds from one of the DTO's couriers. *Id.* That courier had a mutual contact with the Target Cellphone. *Id.* at 13-14. The Target Cellphone had more than 100 communications with the mutual contact between May 14, 2022, and June 27, 2022. *Id.*

On July 20, 2022, investigators received an alert from the San Ysidro, California Port of Entry that Roldan had entered the United States as a pedestrian. Opp'n at 4. Roldan was carrying a "Select Sound Bluetooth Turntable Nostalgic" box. *Id.* After entering the United States, Roldan got onto the San Diego Trolley and exited the trolley in National City, where he approached a silver Chevrolet Onix. *Id.* Defendant was the driver of the

3

vehicle but exited the driver's seat and got into the front passenger seat while Roldan entered the driver's seat. Mot. at 5; Opp'n at 4. Investigators followed the vehicle, but surveillance units lost sight of the vehicle. *Id.*; *id.* Agents attempted to reacquire the location of the car using tracking information it obtained through a ping warrant for Roldan's cellphone, but surveillance units were unable to locate Roldan based on the ping's location. *Id.* Investigators later learned that the movements of the Target Cellphone were consistent with the movement of Defendant on July 20, 2022. Opp'n at 4.

On July 21, 2022, using the ping warrant they had obtained on July 14, 2022, investigators located Defendant in real time and observed him at a UPS store. Mot. at 5. The Chevrolet Onix was parked in the parking lot and investigators observed Defendant exit a Starbucks, enter the driver seat of the car, and remove a "Select Sound Bluetooth Turntable Nostalgic" box from the rear passenger seat. *Id.* at 5-6. Defendant then went into the UPS store with the box and later exited without the box. *Id.* at 6. After Defendant left the UPS store, investigators entered the store and confirmed the box was shipped to an address in New Jersey. *Id.* The box was intercepted in New York and inside investigators located a turntable with 1.98 kilograms of fentanyl concealed inside. Opp'n at 4.

Hours later on July 21, 2022, investigators were notified that Roldan had entered the United States at the San Ysidro Port of Entry as a pedestrian. *Id.* at 5. Investigators surveilled Roldan and saw him meet with Defendant. *Id.* Investigators saw both men drive off in the Chevrolet Onix, driven by Defendant, to a nearby apartment complex. Mot. at 6; Opp'n at 5. Defendant and Roldan were observed walking around the complex with multiple backpacks but not entering the complex. Opp'n at 5. Officers detained both men at the complex. *Id.*

Defendant claimed ownership of the bags and after a consent search of the bags, investigators did not find any illicit items. Mot. at 6; Opp'n at 5. During a consent search of Defendant's person, investigators found a Chevrolet key fob. *Id.*; *id.* Defendant told officers that he found the key on the street approximately 30 minutes earlier, used the key fob to locate the Chevrolet, drove away and denied having any personal property in the

24-cr-02430-JES

vehicle. *Id.*; *id.* Investigators searched the Chevrolet Onix after a K-9 sniff and alert and inside of the trunk, found a Hampton Bay ceiling fan box containing packages of methamphetamine. *Id.*; *id.* Investigators also found a red tote bag in the trunk containing packages of methamphetamine and fentanyl. Opp'n at 5. The DEA lab has since determined that the packages contained a total of 1.04 kilograms of fentanyl and 6.21 kilograms of methamphetamine. *Id.* Defendant and Roldan were arrested after the search of the Chevrolet Onix and Post-*Miranda*, Defendant denied knowledge of the narcotics in the vehicle and denied having shipped from the UPS Store earlier that day. *Id.*

## III.    DISCUSSION

Defendant moves to suppress all evidence seized from the Chevrolet Onix on July 21, 2022. Mot. at 12-13. Defendant argues that although federal agents had a search warrant for cell phone prospective location information and drug trafficking offenses, the warrant was not supported by probable cause. *Id.* at 13. Specifically, Defendant argues that the warrant application, (1) is void of facts to support probable cause; and (2) depends on conclusory allegations. *Id.* The Government argues that Defendant lacks standing to challenge the search because he has not demonstrated a legitimate expectation of privacy. Opp'n at 6.

### A. Standing

The Fourth Amendment protects an individual in those places where he can demonstrate a reasonable expectation of privacy against government intrusion. *Katz v. United States*, 389 U.S. 347, 353 (1967). Fourth Amendment rights, however, are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). To have standing to challenge a search, the inquiry focuses on "whether the individual by his conduct has exhibited an actual (subjective) expectation of privacy, and further, whether the individual's subjective expectation of privacy is one that society is prepared to accept as reasonable." *United States v. Caymen*, 404 F.3d 1196, 199-1200 (9th Cir. 2005) (internal citations and quotations omitted).

24-cr-02430-JES

Defendant has met his burden of demonstrating standing to contest the search warrant of the Target Cellphone. The cell phone was registered to Defendant's mother, providing a sufficient link to Defendant, and Defendant had a property interest in the phone. *See United States v. Finley*, 477 F.3d 250, 258-59 (5th Cir. 2007) (defendant had an expectation of privacy to challenge search of cell phone even though his employer issued the phone, as defendant maintained a property interest in the phone, had a right to exclude others from using it and exhibited a subjective expectation of privacy in the cell phone). Additionally, pursuant to the holding in *Carpenter v. United States*, an individual has an expectation of privacy in the record of their physical movements. 585 U.S. 296, 309-10 (2018). Pursuant to the facts of this case, Defendant had a subjective expectation of privacy that society accepts as reasonable to challenge the search of his prospective location information.

**B. Search Warrant**

Defendant argues that the warrant application: (1) is void of facts to support probable cause; and (2) depends on conclusory allegations. ECF No. 274 at 13. The Government argues that the warrant was supported by probable cause. Opp'n at 7. The Court agrees.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. The standard for determining probable cause for a search means a "fair probability that contraband or evidence is located in a particular place." *U.S. v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (internal quotations and citations omitted). "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question." *Id*. (internal quotations and citations omitted). "Neither certainty nor a preponderance of the evidence is required." *Id*. (internal citations omitted). The Supreme Court has reminded courts that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *Illinois v. Gates*,

24-cr-02430-JES

462 U.S. 213, 235 (1983). Further, when reviewing a warrant, the magistrate judge's "determination of probable cause should be paid great deference." *Id.*

Here, the warrant affidavit provided sufficient support for Magistrate Judge James Cott to conclude that probable cause existed to order a search warrant of the Target Cellphone, specifically prospective location information. The affidavit describes how the Roldan DTO utilized couriers to travel from San Diego, California to, among other cities, including New York to receive packages of narcotics to distribute. Affidavit at 12. The CS, provided law enforcement with numerous telephone numbers and contact information for members of the Roldan DTO, including the leader of the Roldan DTO. *Id.* at 12-13. The CS also stated that he received instructions from the leader of the Roldan DTO through WhatsApp messages. *Id.* at 13. Further, the affidavit describes that on July 8, 2022, the phone number for one of the leaders of the Roldan DTO had two WhatsApp communications with the Target Cellphone. *Id.* at 12. Concurrent to the two communications, between July 1, 2022, and July 11, 2022, the user of the Target Cellphone was in San Diego and then the New York City area. *Id.* Additionally, on July 11, 2022, a courier of the Roldan DTO was arrested by investigators with $100,000 in narcotics proceeds. *Id.* at 13. The arrested courier and the user of Target Cellphone both had contact with the same third-party and the user of the Target Cellphone had communicated with the mutual contact more than 100 times in a little more than a one-month period ending June 27, 2022. *Id.* at 13-14.

The affidavit describes the modus operandi of the Roldan DTO, mailing packages of narcotics from San Diego to cities on the east coast, including New York. Further, the leader of the Roldan DTO used WhatsApp messages to send instructions to couriers within the Roldan DTO. The user of the Target Cellphone had two WhatsApp communications with the leader of the Roldan DTO during the same timeframe in which the user of the Target Cellphone was in San Diego and then New York in July 2022. Additionally, there were more than 100 communications with a mutual contact of the user of the Target Cellphone and a courier of the Roldan DTO who was arrested with $100,000 in narcotics

24-cr-02430-JES

proceeds. While each of these facts individually would be insufficient to establish probable cause, considering the totality of the circumstances, the reasonable inferences drawn from them and paying great deference to the magistrate judge's determination, the Court finds there was a fair probability that contraband or evidence was located in a particular place, specifically the prospective location information for Target Cellphone. Probable cause itself "is not a high bar." *United States v. Dow*, 2023 WL 5992743, at *1 (9th Cir. 2023). The affidavit provided a link between the Target Cellphone and the Roldan DTO from which the magistrate could conclude that there was probable cause that evidence regarding narcotic trafficking would be found in the records and prospective location information for the Target Cellphone. *See Id.*

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to suppress the search warrant. Since the Court finds that the warrant was supported by probable cause, the Court declines to address the Government's discussion of the good faith exception.

**IT IS SO ORDERED**.

Dated:  April 28, 2026

Honorable James E. Simmons Jr.
United States District Judge

24-cr-02430-JES